**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2005 MAR 16 P 2: 14

U.S. DISTRICT COURT
DISTRICT OF MASS.

JOHN DANIEL MOONEY, 05 10502 JLT

Plaintiff,

v.                                   CIVIL ACTION NO.

DEBORAH A. MOONEY,

Defendant.

MAGISTRATE JUDGE *New Mac* ,

RECEIPT #
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK.
DATE 3/16/05

## VERIFIED COMPLAINT AND JURY DEMAND

### INTRODUCTION

The Plaintiff brings this case seeking equitable relief in the form of the rescission of a divorce settlement agreement entered into by the Plaintiff with the Defendant. Rescission of the agreement is necessary in this case because, when the agreement was entered into between the parties, the Plaintiff was under duress, undue influence, and was not otherwise competent to enter into any legally binding contract.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00.

The amount in controversy exceeds $75,000.00 for the following reasons:

A.    The Plaintiff is currently obligated under a contract to pay the Defendant $650.00 per week *ad infinitum*; at said rate, the payments would surpass $75,000.00 in less than three years.

B.    The Plaintiff has been paying $650.00 per week since approximately May 21, 1999; accordingly, the total amount of said payments exceed $75,000.00.

### PARTIES

1. The Plaintiff, John Daniel Mooney ("the Plaintiff") is a citizen of the Commonwealth of Massachusetts, having a principal place of abode located in Quincy, Norfolk County.

2. The Defendant, Deborah A. Mooney ("the Defendant") is a citizen of the State of Maine, having a principal place of abode located in Farmington, Franklin County.

1

## FACTS

3. The Plaintiff realleges, reavers, and incorporates paragraphs 1-2 as if fully set forth herein.

4. On or about April 21, 1979, the Plaintiff and the Defendant were married in Pembroke, Massachusetts.

5. By 1981, the parties' marriage produced two male children.

6. Over the course of said marriage, it became apparent to the Plaintiff that he was to a substantial extent of homosexual orientation.

7. The Plaintiff suspected that he was likely of homosexual orientation throughout and prior to the marriage.

8. Despite acknowledging to himself that he was a homosexual, he remained in the marriage for the sake of his two sons' welfare.

9. Eventually, in 1998, the Plaintiff and Defendant filed for divorce in Plymouth Probate and Family Court, citing irretrievable breakdown of the marriage.

10. On March 30, 1999, a Separation Agreement was entered into between the parties.

11. A true and accurate copy of the Separation Agreement attached hereto as Exhibit A.

12. On June 1, 1999, the Probate Court (Menno, J.) entered Judgment of Divorce Nisi.

13. A true and accurate copy of the Judgment of Divorce Nisi is attached hereto as Exhibit B.

14. Incorporated into the Judgment of Divorce Nisi was the Separation Agreement, which also survived as an independent contract.

15. Prior to its dissolution, the parties' marriage became tumultuous.

16. During the final stages of the marriage, the Plaintiff was under the care of a licensed psychiatrist, Dr. Richard Netsky.

17. During the final stages of the marriage, the Plaintiff was under the care of a licensed psychologist, Dr. Thomas Davey.

18. During the final stages of the marriage, the Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder and Depression , for which he was prescribed and administered multiple psychoactive drugs, to wit, Ritalin, Prozac, Adderall, Dexedrine, and perhaps others.

19. These drugs had the effect of rendering the Plaintiff incapable of functioning cognitively or making rational decisions.

20. These drugs caused the Plaintiff to have episodes of psychosis and hallucinations.

21. During the final stages of the marriage, the Defendant utilized various deceptive, coercive, and otherwise illegal or inequitable tactics to extort and pressure the Plaintiff into complying with her will.

22. During the final stages of the marriage, the Plaintiff patronized Internet "chat rooms".

23. Said chat rooms were also patronized by other homosexual men in an effort to lend support and encouragement to each other.

24. Some time after the Plaintiff began patronizing the chat rooms, the Defendant confronted the Plaintiff.

25. During this confrontation, the Defendant claimed to have masqueraded as one of the men with whom the Plaintiff was communicating via the chat room.

26. The Defendant threatened that if the Plaintiff did not comply with the Defendant's will, the Defendant would disclose the contents of the chat room communications, in written form, to the Plaintiff's entire family, including, but not limited to, his sons.

27. The Defendant threatened that if the Plaintiff did not comply with the Defendant's will, the Defendant would disclose the contents of the chat room communications, in written form, to the Plaintiff's employer and co-workers.

28. During the final stages of the marriage, the Defendant purchased a motor vehicle.

29. As part of the consideration for the purchase of her motor vehicle, the Defendant traded in the Plaintiff's Jeep Cherokee.

30. The trade of the Jeep Cherokee was without the knowledge or consent of the Plaintiff.

31. The trade of the Jeep Cherokee would not have taken place but for the Defendant transferring title to the vehicle to the dealer.

32. The Certificate of Title, as presented to the dealer, purportedly bears the signature of the Plaintiff.

33. The Plaintiff never signed the Certificate of Title in order to transfer it to any person or entity.

34. A true and accurate copy of the Certificate of Title is attached hereto as <u>Exhibit C</u>.

35. The Motor Vehicle Purchase Contract entered into by the Defendant also bears the purported signature of the Plaintiff with the designation "Purchaser".

36. The Plaintiff never signed the Motor Vehicle Purchase Contract and never agreed to purchase the vehicle.

37. A true and accurate copy of the Motor Vehicle Purchase Contract is attached hereto as Exhibit D.

38. The Defendant, without consent, signed and forged the Plaintiff's signature on the Certificate of Title and tendered said forged certificate to the dealer.

39. After the fact, the Plaintiff learned of the forged signature and purchase of the new vehicle and confronted the Defendant on the matter.

40. Upon being confronted, the Defendant threatened the Plaintiff by telling him that she would distribute the written chat room conversations to the Plaintiff's family and employer.

41. As a result of this threat, the Plaintiff did not pursue the forgery matter further.

42. During the final stages of the marriage, the Defendant became violent and otherwise abusive towards the parties' children.

43. Prior to the dissolution of the marriage, the Plaintiff owned a life insurance policy on his own life.

44. During the time when divorce proceedings were pending, ownership of said life insurance policy was transferred to the Defendant.

45. A true and accurate copy of a document entitled "Owner Designation" is attached hereto as Exhibit E.

46. Said transfer was without the Plaintiff's knowledge or consent.

47. Said transfer was the result of a forgery and/or a fraud perpetrated by the Defendant.

48. The Defendant still utilizes threats of exposure and otherwise as a method of coercing, or attempting to coerce, the Defendant into complying with her will and not pursuing his rights and remedies in a court of law.

## COUNT I—RESCISSION

49. The Plaintiff realleges, reavers, and incorporates paragraphs 1-48 as if fully set forth herein.

50. The coercive behavior and blackmail by the Defendant towards the Plaintiff placed the Plaintiff under duress.

51. The Defendant exerted undue influence upon the Plaintiff.

52. The coercion, blackmail, duress, and undue influence also occurred during the time when the Plaintiff was heavily medicated and under psychiatric and psychological care.

53. The coercion, blackmail, duress, and undue influence also occurred during the time when the Separation Agreement was entered into.

54. The Plaintiff was heavily medicated and under psychiatric and psychological care when the Separation Agreement was entered into.

55. Despite being heavily medicated and under psychiatric and psychological care and being subject to coercion, blackmail, duress, and undue influence, Judge Menno, of the Probate & Family Court, found that the Separation Agreement was "not the product of any fraud, duress, or coercion." Exhibit B.

56. As a result of the Plaintiff's ill psychological health and heavy doses of psychoactive medication, as well as the Defendant's coercion, blackmail, duress, and undue influence, the Plaintiff was unable to knowingly, willingly, or voluntarily enter into the Separation Agreement as a legally binding contract.

WHEREFORE, the Plaintiff, John Daniel Mooney, respectfully requests that this Honorable Court issue an order rescinding the Separation Agreement attached hereto as Exhibit B, insofar as it is a legally binding contract.

## COUNT II-CANCELLATION

57. The Plaintiff realleges, reavers, and incorporates paragraphs 1-56 as if fully set forth herein.

WHEREFORE, the Plaintiff, John Daniel Mooney, respectfully requests that this Honorable Court issue an order canceling the Separation Agreement attached hereto as Exhibit A, insofar as it is a legally binding contract.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, John Daniel Mooney, respectfully requests that this Honorable Court enter Judgment in his favor and against the Defendant, Deborah A. Mooney:

I.    In accordance with Count I, and issue an order rescinding the Separation Agreement attached hereto as Exhibit A;

II.   In accordance with Count II, and issue an order canceling the Separation Agreement attached hereto as Exhibit A; and

III.  Any other relief that the Court finds just and equitable.

Respectfully submitted,
JOHN DANIEL MOONEY,
By his attorneys,

Brian J. Hughes, B.B.O.# 654204
Donald H. Jackson, Jr., B.B.O.# 248620
Jackson & Coppola, P.C.
90 Rockland Street
Hanover, Massachusetts 02339
(781) 826-1485

Date: 3/3/05

## **VERIFICATION**

I, John Daniel Mooney, hereby swear under the pains and penalties of perjury that I have read this Verified Complaint and that the allegations contained herein are true and accurate to the best of my knowledge and belief.

_____
John Daniel Mooney

# SEPARATION AGREEMENT

This AGREEMENT OF SEPARATION is entered into this      day of April, 1999, by John Daniel Mooney (the "Husband"), of 149 Bolivar Street, #6C, Canton, Norfolk County, Massachusetts, and Deborah A. Mooney (the "Wife"), of 25 West Street, Carver, Plymouth County, Massachusetts. All references in the within Agreement to "parties" shall mean the above-named Husband and Wife.

## STATEMENT OF FACTS

1.    The Husband and Wife were married in Pembroke, Plymouth County, Massachusetts on April 21, 1979, and last lived together in March, 1997 at Carver, Plymouth County, Massachusetts.

2.    The Husband and Wife have separated and are living apart.

3.    As a result of the mutual love, respect and admiration the Husband and Wife each have for the other,  the Husband and Wife have agreed to amicably resolve any questions relating to their separation within the context of this Agreement. This Agreement shall serve to confirm their separation and to settle between themselves all questions pertaining to their respective property and estate rights and the support and maintenance of the Husband and Wife.

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants and agreements hereinafter contained, the Husband and Wife mutually agree as follows:

1

# ARTICLE I

A.     Alimony.

Taking into consideration all relevant facts and circumstances, including but not limited to the financial circumstances of the respective parties, the Husband agrees to pay the Wife $650 per week until such time as she remarries. *The husband and the wife both agree the first alimony payment shall be on May 21, 1999.*

B.     Medical Insurance.

The Husband agrees to maintain the current medical insurance with major medical coverage, or its equivalent until alimony ceases.


# ARTICLE II

## PERSONAL PROPERTY

A.     The Wife agrees that the piano, located in the marital home, is the personal property of the Husband. The Wife agrees to return the piano to the possession of the Husband.


B.     The Husband and Wife jointly own a 1998 Jeep Grand Cherokee Limited. The Husband agrees to transfer title of the automobile to the Wife.  It shall be the Wife's responsibility to prepare the necessary documents to effectuate such transfer.   The Husband agrees to execute any documents reasonably necessary to effectuate such transfer provided that any such documents do not require the Husband to guarantee the Wife's discharge of any obligations. The parties agree that the Wife shall be solely responsible for

any and all payments concerning the automobile including, but not limited to, principal, taxes, interest, automobile insurance, repairs and maintenance.

C.    The foregoing notwithstanding, the parties acknowledge that they have heretofore divided between them all their personal property to their mutual satisfaction. Henceforth each of them shall own, have and enjoy, independently of any claim or right of the other, all items of personal property of every kind now or hereafter owned or held by him or her, with full power to dispose of the same as fully and effectually, in all respects and for all purposes, as if he or she were unmarried.

D.    All personal property held in the sole name or in the sole possession of either party, including, without limitation, securities, bank accounts, retirement funds and tangible personal property, shall belong to party in whose name or possession said personal property is presently located. Specifically, the Husband's IRA fund will remain as the personal property of the Husband.

## ARTICLE III

## TAXES

A.    Income Tax Returns.

1.    Each party represents and warrants to the other that he or she has duly paid all income taxes, state and federal, attributable to him or her on all joint returns heretofore filed by the parties; that to his or her knowledge no interest or penalties are due or owing with respect thereto, no tax deficiency proceeding is pending or threatened thereon, and no audit thereof is pending.

3

2.    If there is a deficiency assessment in connection with any joint returns (heretofore or hereafter filed), the party notified thereof shall notify the other immediately in writing. The party whose error or omission caused the deficiency shall pay the amount ultimately determined to be due thereon, together with interest and penalties, and any and all expenses that may be incurred if he or she decides to contest the assessment. If neither party is responsible and it is determined that the error or omission is caused by an outside party, each party shall be equally responsible for the total amount due. Each party shall pay that portion that equals his/her percentage of their total income. If there is a tax refund, each party shall receive that portion that equals his/her percentage of their total income.

3.    Each party shall in all respects indemnify the other against, and hold him or her harmless from, any deficiency assessment or tax lien arising out of any error or omission on caused by him or her on any joint return hereafter filed by the parties, as well as any damages and expenses whatsoever in connection therewith. Each party shall keep the other fully informed of any and all steps taken by him or her with respect to a deficiency assessment.

## ARTICLE IV

## REAL ESTATE

A.    The Husband and Wife own, as tenants by the entirety, the real estate located at 25 West Street, Carver, Plymouth County, Massachusetts, which residence was formerly the parties' marital residence.

4

B.    The Husband agrees to transfer title of the property to the Wife by deed once the Wife is able to obtain a mortgage in which the Husband is not listed as a co-mortgagee. It shall be the Wife's responsibility to prepare the necessary documents to effectuate such transfer.   The Husband agrees to execute any documents necessary to effectuate such transfer. The Wife agrees to remortgage the property within one year of the date of this Agreement.

C.    The parties agree that the Wife shall be solely responsible for any and all payments concerning the marital home including, but not limited to, principal, taxes, interest, home owners insurance, repairs, and maintenance.

D.    If the Wife elects at any time to convey the home or an interest therein to someone other than the parties' children or to a future spouse as Tenants by the Entirety, then the Husband shall be entitled to a specific percentage of the then existing equity which percentage shall vary depending upon the date of conveyance, as more specifically specified in the annexed Attachment "A".

## ARTICLE V

## GENERAL PROVISIONS

The following provisions shall become effective upon execution of this Agreement, except to the extent they are expressly or by implication modified or rendered inapplicable by the foregoing articles of this Agreement:

A.    Debts.   The Husband warrants and represents that he has not contracted any indebtedness for which the Wife is or may be liable.  The Wife warrants and represents that she has not contracted any indebtedness for which the Husband is or may be liable. The Husband and Wife further warrant and represent that neither will contract from and after the date hereof any indebtedness for which the other is or may be liable, except such as has specifically been assumed by the provisions of this Agreement elsewhere contained. If either of the parties hereto shall be called upon to pay any obligation for which the other shall be liable, he or she shall promptly give notice to the other party, who shall have the opportunity in good faith and at his or her expense to defend any such claim; if either party shall nevertheless be called upon to pay any such claim, the party responsible therefor shall indemnify and hold the other harmless therefrom, including attorney's fees and related expenses.  The parties represent that neither of them has and will not hereafter use or utilize the other's name or business name for purposes of having credit extended to him or her.

B.    Counsel Fees.  The parties agree that the Husband shall be solely responsible to pay reasonable attorney's fees of the Wife. In addition, the Wife shall be solely responsible for any and all payments concerning the $3000.00 equity line of credit borrowed to retain counsel.

C.    Resolution of Disputes.  In the event of any dispute or disagreement concerning the performance, interpretation, meaning or application of this Agreement, and the parties cannot reach mutual agreement, the matter in dispute shall first attempted to be resolved

through mediation, and if unsuccessful, then be submitted to a court of competent jurisdiction for resolution.

D.    Waivers.    The parties acknowledge and confirm that they willingly accept the provisions of this Agreement and deem it to be a fair, adequate and reasonable resolution of all issues and disputes, commensurate with the parties' needs, the parties' incomes and financial worth, and their previous standard of living and with full consideration of the circumstances of each party and all factors required to be considered pursuant to Massachusetts General Laws Chapter 208, Section 34.    The parties further acknowledge that such provisions are fully satisfactory to them and that no part of this Agreement is a product of fraud, duress or coercion and that each has freely had the opportunity to negotiate the terms of this Agreement to their respective satisfactions.    Accordingly, they accept the same in lieu of, and in full and final settlement and satisfaction of, any and all claims and rights that either may have against the other for alimony, support or property division, except as otherwise provided in this Agreement.

E.    Entire Understanding.    The Husband and Wife have incorporated in this Agreement their entire understanding.    No oral statement or prior written matter, extrinsic to this Agreement, shall have any force or effect.    Neither the Husband nor the Wife is relying on any representations other than those expressly set forth herein.

F.    Voluntary Execution.    The parties represent to each other that each fully understands the facts and his or her legal rights and liabilities as set forth in this

7

Agreement, that after such knowledge, each believes this Agreement to be fair, just and reasonable and that each is signing this Agreement freely and voluntarily.

G.    Strict Compliance.  The failure of the Husband or of the Wife to insist in any instance upon the strict performance of any of the terms hereof shall not be construed as a waiver of such term or terms for the future, and the same shall nevertheless continue in full force and effect.  In the event any part of this Agreement shall be held invalid, such invalidity shall not invalidate the whole Agreement, but the remaining portions of this Agreement shall continue to be valid and binding.

H.    Documents.  Whenever called upon to do so by the other party, each party shall forthwith execute, acknowledge and deliver to or for the other party without consideration any and all deeds, assignments, bills of sale or other instruments that may be necessary or convenient to carry out the provisions of this Agreement, or that may be required to enable the other party to sell, encumber, hypothecate, or otherwise dispose of the property now or hereafter owned or acquired by such other party.

I.    Waiver of Estate Claim.  Except as otherwise provided in this Agreement, each party hereby waives and releases any and all rights that he or she may now have or hereafter acquire as spouse under the present or future laws of any jurisdiction:

(a)    To elect to take against any will or codicil of the other party now or thereafter in force;

(b)    To share in the party's estate in case of intestacy; and

8

(c)    To act as executor or administrator of the other party's estate. It is the intention of the parties that their respective estates shall be administered as though no marriage between them had ever existed.

J.    Court Costs and Counsel Fees in Event of Breach. If either the Husband or the Wife shall commit a breach of any of the provisions of this Agreement and recourse to an attorney and/or legal action shall be reasonably required to enforce such provisions and be instituted by the other, the party in breach shall be liable for all court costs and reasonable counsel fees incurred in instituting and prosecuting such action.

K.    Effect of Agreement. In any divorce proceedings, this Agreement shall be exhibited to the presiding Judge before whom the divorce proceedings shall be heard. The parties agree that with respect to issues involving their property, the support and maintenance of the Husband and the Wife, and all rights arising under Section 34 of Chapter 208 of the General Laws of Massachusetts, as amended, this Agreement shall be incorporated but not merged in the divorce judgment, and shall survive as an independent contract between the parties.

L.    Governing Law. This Agreement shall be construed and governed according to the laws of the Commonwealth of Massachusetts.

This Agreement is executed in three counterparts, each of which shall be deemed an original and all constituting together one and the same instrument, this being one of the counterparts.

WITNESS our hands and seals this                day of April, 1999.

John Daniel Mooney

3/30/99

Deborah A. Mooney

3-30-99

10

COMMONWEALTH OF MASSACHUSETTS

*Plymouth* ss.

On this  30th  day of ~~April~~ March, 1999, then personally appeared the above-named John Daniel Mooney and acknowledged that the foregoing statements are true to the best of his knowledge and belief, before me.

*Carole C. Roy*
Notary Public
My commission expires:
3 - 02 - 2001

COMMONWEALTH OF MASSACHUSETTS

Plymouth     ss.

On this  30th  day of ~~April~~ March, 1999, then personally appeared the above-named Deborah A. Mooney and acknowledged that the foregoing statements are true to the best of her knowledge and belief, before me.

*Mary J. McCadden*
Notary Public  Mary J. McCadden
My commission expires:  10-21-2005

11

## ATTACHMENT "A"

### Schedule of Husband's Equity in Marital Home

**A. Years 1-5**

If the Wife elects to convey the marital home or an interest therein to someone other than the parties' children or to a future spouse as Tenants by the Entirety, during the first five years following the execution of this Agreement, the Husband shall be entitled to receive from the Wife, based upon the date of conveyance, the following percentage of equity:

| Year | Percentage |
|------|------------|
| 1 | 25.0 % |
| 2 | 22.5 % |
| 3 | 20.0 % |
| 4 | 15.0 % |
| 5 | 10.0 % |

Should the Wife remarry during the first five years following the execution of this Agreement, the Husband shall not be entitled to any equity in the marital home should the Wife elect to convey the marital home or an interest therein during that time.

**B. Years 6-10**

If the Wife elects to convey the marital home or an interest therein to someone other than the parties' children or to a future spouse as Tenants by the Entirety, during the sixth through the tenth years following the execution of this Agreement, the Husband shall be entitled to receive from the Wife, based upon the date of conveyance, the following percentage of equity:

| Year | Percentage |
|------|------------|
| 6 | 7.5 % |
| 7 | 7.5 % |
| 8 | 7.0 % |
| 9 | 6.5 % |
| 10 | 6.0 % |

Should the Wife remarry during the sixth through the tenth years following the execution of this Agreement, the Husband shall be entitled to 5.0 % of any equity in the marital home should the Wife elect to convey the marital home or an interest therein during that time.

12



C. Years 11-15

If the Wife elects to convey the marital home or an interest therein to someone other than the parties' children or to a future spouse as Tenants by the Entirety, during the eleventh through the fifteenth years following the execution of this Agreement, the Husband shall be entitled to receive from the Wife, based upon the date of conveyance, the following percentage of equity:

| Year | Percentage |
|------|------------|
| 11 | 5.0 % |
| 12 | 5.0 % |
| 13 | 4.0 % |
| 14 | 4.0 % |
| 15 | 4.0 % |

Should the Wife remarry during the eleventh through the fifteenth years following the execution of this Agreement, the Husband shall be entitled to 3.0 % of any equity in the marital home should the Wife elect to convey the marital home or an interest therein during that time.

D. In Futuro 16+

Following the fifteenth year of the execution hereof, should the Wife retain sole interest in the marital home, the Husband shall not be entitled to any equity in the marital home should the Wife elect to convey the marital home or an interest therein.

For purposes of this Agreement, equity shall be defined as the fair market value of the marital home set off by the existing amount due under mortgage.

13

## Commonwealth of Massachusetts
### The Trial Court

Plymouth _____ Division    **Probate and Family Court Department**    Docket No. __98D 1672-DV1__

### Judgment Of Divorce Nisi

_____ JOHN DANIEL MOONEY _____ , Plaintiff

of __Weymouth_____ in the County of __Norfolk_____

v.
_____ DEBORAH A. MOONEY _____ , Defendant

of __Carver_____ in the County of __Plymouth_____

_ _ _ All persons interested having been notified in accordance with the law, and after hearing, it is adjudged nisi that a divorce from the bond of matrimony be granted the said plaintiff for the cause of _____

_____

_____ ~IRRETRIEVABLE BREAKDOWN - 1B _____

_____

as provided by Chapter 208, sections 1, 2 and that upon and after the expiration of ninety days from the entry of this judgment, it shall become and be absolute unless, upon the application of any person within such period, the Court shall otherwise order. It is further ordered that the Separation Agreement by and between the parties dated April 1, 1999 and filed herewith is hereby incorporated and shall survive as an independent contract. The Court finds said agreement is not the product of any fraud, duress, or coercion.

A True Copy,
Attest: _John F. Daley_____
                                    Register

Date __6/1/99__
_____
                    _____
                    Justice of Probate and Family Court

CJ-D 403 (2/90)

# CERTIFICATE OF TITLE

## THE COMMONWEALTH OF MASSACHUSETTS

TITLE NUMBER
AM258069

VEHICLE IDENTIFICATION NUMBER
1J4GZ78SXSC585393

DATE OF ISSUE
02/04/95

MFRS. MODEL YEAR    MAKE
1995    JEEP

MODEL NAME    MODEL NO.
GRCHER    ZJJL74

BODY STYLE TYPE    NEW USED
UTIL    N

CYL. PASS. DRS.    PURCHASE DATE
06 05 4    11/30/94

ODOMETER READING
27
ACTUAL MILEAGE

PREV. TITLE NO    PREV. TITLE STATE

NAME AND ADDRESS OF VEHICLE OWNER(S)
MOONEY, J DANIEL
PO BOX 186
CARVER, MA 02330

FIRST LIENHOLDER

SECOND LIENHOLDER

RELEASE OF LIEN
THE LIENHOLDER'S INTEREST IN THE VEHICLE DESCRIBED IN THIS CERTIFICATE IS HEREBY RELEASED.

NAME _____

NAME _____    DATE RELEASED _____    AUTHORIZED SIGNATURE _____

NAME _____    DATE RELEASED _____    AUTHORIZED SIGNATURE _____

THE REGISTRAR OF MOTOR VEHICLES HEREBY CERTIFIES THAT AN APPLICATION FOR A CERTIFICATE OF TITLE FOR THE MOTOR VEHICLE DESCRIBED HEREIN HAS BEEN DULY FILED, PURSUANT TO THE PROVISIONS OF THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS. AND BASED ON THE STATEMENTS OF THE APPLICANT AND THE RECORDS ON FILE WITH THIS AGENCY, THE APPLICANT NAMED IS THE OWNER OF SAID VEHICLE. THE REGISTRAR OF MOTOR VEHICLES FURTHER CERTIFIES THAT THE VEHICLE IS SUBJECT TO ANY SECURITY INTERESTS SHOWN HEREIN.

JEROLD A. GNAZZO
REGISTRAR

VOID IF ALTERED

**WARNING:** Federal and Massachusetts laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE

THIS IS TO BE COMPLETED BY THE SELLER and delivered to the Purchaser with the vehicle. If Non-Dealer sale, purchaser must make application for a new Certificate of Title on Form RMV-1, and file it immediately with the Massachusetts Registry of Motor Vehicles and surrender the Assigned Title.

Date ____2/13____ 19 _98_

For the sum of $_____ , I/we hereby assign, transfer and convey unto: ____CLASSIC CHRYSLER CENTER, INC.____
(Print)

Street_____ City ____38 BROADWAY, RTE. 138____

the motor vehicle described on the reverse side of this certificate and I we hereby warrant the title to said __RAYNHAM, MA 02767__ free of all liens and encumbrances.

### ODOMETER DISCLOSURE STATEMENT

I state that the odometer now reads ____56597____ (NO TENTHS) and to the best of my knowledge that it reflects the actual mileage of the vehicle unless one of the following statements is checked :

☐ I certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits. (The odometer started at zero again.)

☐ I certify that the odometer reading is not the actual mileage **WARNING-ODOMETER DISCREPANCY**

Seller's signature _____  Printed Name _Deborah Morney_ Date _2/13/98_

Seller's signature _____  Printed Name _____ Date _____

Seller's address (PRINT) _____ Zip _____

IF SIGNING BELOW INDICATES THAT YOU ARE

# MOTOR VEHICLE PURCHASE CONTRACT

CLASSIC CHRYSLER CENTER
38 BROADWAY, RTE. 138
RAYNHAM, MA 02767

FOR CONSUMER USE ONLY

| DATE | FEB 13 19 98 | ORDER NO. | STOCK NO. 80142 | SALESMAN KATHY VIERA |
|---|---|---|---|---|

**ENTER MY ORDER FOR** DEBORAH A MOONEY/DANIEL Z MOONEY
CARVER MA 02330

STREET/ADDRESS P O BOX 186
HOME PHONE (508)866-9878   BUSINESS PHONE

| ENTER MY ORDER FOR | 1 (QUANTITY) | NEW ☒ USED ☐ | FORMER USE (if applicable) | DEMONSTRATOR ☐ FORMER LEASED CAR ☐ | POLICE CAR ☐ FORMER DAILY RENTAL ☐ | REBUILT INSURANCE TOTAL ☐ TAXICAB ☐ |
|---|---|---|---|---|---|---|

| Year 1998 | Make JEEP | Model Name GR CHEROKEE | Body Style/Type 4WD 4D UTILITY | Model No. JJL74 | Transmission Standard XX Automatic ☐ (Speeds) | Cyl. 8 | Pass. 5 | Doors 4 |
|---|---|---|---|---|---|---|---|---|

| Vehicle Identification No. 1J4GZ78Y5WC150016 | Color 1st BLACK 2nd 3rd | Interior 1st GRAY 2nd 3rd | Top | Odometer mi. XX km. 265 | Approx. Delivery Date |
|---|---|---|---|---|---|

**TRADE-IN** Year 1995 Make JEEP
Model GR CHERO Type 4DR UT Color WHITE
V.I.N. 1J4GZ78SXSC585393
Odometer 56597    (☒ mi. ☐ km. ☐)
Transmission ☐ Standard (Speeds) _____ ☐ Auto
No. of Cyl. 6    Pass.    Doors
Salvage Title    Yes ☐    No ☐

**PREVIOUS OWNER**
City/State/Zip
**LIENHOLDER** NONE
Address
City/State/Zip
Acct. No.    Check No.
Balance Due $ N/A

**Additional Information-Vehicle Purchased**
LIENHOLDER
Address
City/State/Zip

**INSURANCE** ARBELLA MUTUAL
Agent/Bra HOLLIS INS
Address/C PLYMOUTH MA

## WARRANTY INFORMATION
☐ This vehicle carries an express warranty. You may obtain a copy of such warranty from the dealer upon request.

☐ This vehicle does not carry an express warranty.

*(Initial Applicable Statement)*

REGISTRATION FEE-TITLE FEE
SALES TAX

Application for Title XX
Application for Reg    New XX   Transfer
Registration No.

| Registration Fee | $ | 70 00 |
|---|---|---|
| Title Fee | $ | 50 00 |
| | | 829 85 |

*(Pay to Commonwealth of Massachusetts)*

*Sales Tax amount is included in right hand column only when dealership check is issued in payment of Mass. Sales Tax.

Social Security No. 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 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
Date of Birth 09/06/58   09/06/55
Employer ID No.
Other
Price of Unit $35900.00
$ 16597.00
**PLUS TRADE**
Additional Equipment/Items

---

In the event I fail to take delivery of the vehicle purchased by me within forty-eight (48) hours after I have been notified by you that it is ready for delivery and pay the total contract price in the manner indicated, my deposit in the amount of $ N/A may, at your option, be retained by you to compensate you in whole or in part for any loss sustained by you. Your right to retain my deposit shall be in addition to and not instead of any other right or remedy provided by applicable law including, without limiting the generality of the foregoing, the sale of the car or truck I agree to purchase. If the amount of my deposit exceeds actual damages sustained by you, you will promptly refund the difference to me.

*Purchaser's Initials*

ALL REBATES AND SALES INCENTIVES OFFERED BY THE MANUFACTURER OR DISTRIBUTOR ARE HEREBY ASSIGNED TO THE DEALER.

*Purchaser's Initials*

This contract is not binding upon either dealer or purchaser until signed by dealer or its authorized representative. PURCHASER MAY CANCEL THIS CONTRACT AND RECEIVE A FULL REFUND AT ANY TIME UNTIL S/HE RECEIVES A COPY OF THIS CONTRACT SIGNED BY AN AUTHORIZED DEALER REPRESENTATIVE. PURCHASER MUST GIVE WRITTEN NOTICE OF CANCELLATION TO THE DEALER.

The front and back of this order comprise the entire agreement between the dealer and purchaser and no other agreement or understanding has been made or entered into. Purchaser represents and warrants that no credit other than that stated above has been extended to him/her by dealer. Purchaser represents and warrants that s/he has read and understands the materials printed on this motor vehicle purchase contract. Purchaser acknowledges receipt of a signed copy of this motor vehicle purchase contract.

*Co Purchaser's Signature*
*Purchaser's Signature*
*Approved Authorized Dealer Representative*

**Dealer Installed Accessories**

| | | |
|---|---|---|
| 1. Total Price | | 35900.00 |
| 2. Discount | 2803.00 | |
| 3. Trade-In Allowance 19303.00 | 16500.00 | |
| 4. Trade Difference (line 1 - lines 2 & 3) | | 16597.00 |
| 5. *Mass Sales Tax ( % of line 4) | $ | |
| 6. Title Preparation | | 5 00 |
| 7. Documentary Preparation (itemize) | $ | 90 00 |
| 8. Other | $ | |
| 9. TOTAL CONTRACT PRICE (total of lines 4,5,6,7 and 8) | | 16692.00 |
| 10. Balance Due on Trade-in | | N/A |
| 11. Total lines 9 and 10 | | 16692.00 |
| 12. Deposit | $ | N/A |
| 13. Rebate(s) | $ | |
| 14. Amount to be Financed | $ | N/A |
| 15. Cash due on delivery | $ | 6692.00 |
| 16. TOTAL PAYMENT (total of lines 12,13, 14 and 15; line 16 must equal line 11) | | 16692.00 |

Form 102-77, Rev. 4, 4/1/95 MSADA Services Corp., 59 Temple Place, Boston, MA 02111

DEALER'S COPY

Affidavit-Forged Form Endorsement

STATE OF MASSACHUSETTS )

COUNTY OF                    )ss

The undersigned, J. Daniel Mooney, being duly sworn, deposes and says that he resides
in the City of ___Quincy___, County of ___Norfolk___, State of
Massachusetts and that he is the person named as transferor in the Ownership
Endorsement dated October 28, 1998 and purporting to transfer ownership of policy
9726985 issued by the Northwestern Mutual Insurance Company; that the signature of
said endorsement reading "J. Daniel Mooney" was not placed thereon by him, not under
any authority given by him to any one else; and that it was not his intention that the
ownership of said policy be transferred to any other person.

_____
J. Daniel Mooney

__308 Quarry St. #602__
Address

__Quincy, MA  02169__
City        State        Zip

__617-773-7729__
Phone (home)

__781-826-7186__
Phone (work)

_____
Subscribed and sworn to before me
This 3/ day of _March_, 2005
Notary Public
My Commission Expires: 5/7/2010



**OWNER DESIGNATION** *(Do Not Use For Disability Income Policies)*
CAUTION: USE BLACK INK TO COMPLETE THE FORM

**Northwestern Mutual Life**
720 East Wisconsin Avenue
Milwaukee, Wisconsin 53202

AGENT NO. 44181

*Before Completing This Form Read Information Form 15-1253, Instructions and Sample Wordings for Form 90-1638.*

APPLICATION NO. OR POLICY NO. 9-726-985

INSURED J. Daniel Mooney

**PLEASE COMPLETE THIS INFORMATION REGARDING THE NEW OWNER DESIGNATED BELOW.**

| TAXPAYER ID NO. (SOCIAL SECURITY NO./EMPLOYER ID NO.) | DATE OF BIRTH | | |
|---|---|---|---|
| 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 | 616 158 | ☐ Male  ☒ Female | ☐ Mr.  ☒ Mrs.  ☐ Ms.  ☐ Dr.  ☐ Other |

**NOTE:** The new Owner's address should be provided on the Address Information Sheet 15-1265 which is enclosed. Directions for mailing of future premium notices should also be provided on that form.

The transferor requests and directs the Company to make the provisions on Form 90-1638 a part of the policy.

The Owner(s) of the Policy will be:

*Deborah A. Mooney, wife of the insured.*

Date 10/28/98

Signature of Transferor ✳ _[signature]_

Form Recorded and Endorsement Waived

**FOR HOME OFFICE USE**
The Northwestern Mutual Life Insurance Company

Date NOV 1 0 1998   _Mary Gessut_

90-1638 (0698)

JETFORM 4
(Page 1 of 2)

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
JOHN DANIEL MOONEY

**DEFENDANTS**
DEBORAH A. MOONEY

**(b)** County of Residence of First Listed Plaintiff    Norfolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Franklin
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Brian J. Hughes, Jackson & Coppola, P.C., Assinippi Commons, Ste. 203
101 Longwater Circle, Norwell, MA 02061 (781) 792-3984

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☑ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☑ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☑ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. s 1332
Brief description of cause:
Diversity action for rescission of contract that was entered into under duress.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE
DOCKET NUMBER

DATE    03/03/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

1.  Title of case (name of first party on each side only)_____John Daniel Mooney v. Deborah A. Mooney_____

2005 MAR 15 P 2: 14

U.S. DISTRICT COURT
DISTRICT OF MASS.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| [ ] | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |
| [ ] | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121<br>740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases |
| [✓] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,<br>315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,<br>380, 385, 450, 891. |
| [ ] | IV. | 220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,<br>690, 810, 861-865, 870, 871, 875, 900. |
| [ ] | V. | 150, 152, 153. |

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES [ ]    NO [✓]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

YES [ ]    NO [✓]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES [ ]    NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES [ ]    NO [✓]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES [ ]    NO [ ]

A.  If yes, in which division do all of the non-governmental parties reside?

Eastern Division [ ]    Central Division [ ]    Western Division [ ]

B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Brian J. Hughes
ADDRESS   Assinippi Commons, Ste. 203, 101 Longwater Circle, Norwell, MA 02061
TELEPHONE NO.   (781) 792-3984

(CategoryForm.wpd - 2/15/05)