UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                )
JOHN DANIEL MOONEY              )
                                )
        Plaintiff               )
                                )         Civil Action No. 05-10502-JLT
v.                              )
                                )
DEBORAH A. MOONEY               )
                                )
        Defendant               )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR THE COURT TO DECLINE JURISDICTION

NOW COMES the Defendant in the above captioned matter and submits this Memorandum of Law in Support of her motion requesting that the Court refrain from exercising jurisdiction pursuant to the domestic relations exception and the doctrine of abstention.

I.    Relevant Factual and Procedural Background

The parties were divorced by Judgment of Divorce Nisi in the Plymouth County Probate and Family Court on June 1, 1999, docket number 98D-1672-DV1 ("the Judgment"). The Judgment incorporated a Separation Agreement of the parties dated April 1, 1999. In the Judgment, the Court made a finding that the Separation Agreement was "not the product of any fraud, duress, or coercion." See Exhibit 1. The Separation Agreement requires, among other things, the Plaintiff to pay the Defendant $650 in alimony per week until she remarries and to provide her with health insurance until his alimony obligation ceases. See Exhibit 2. The Plaintiff did not file a Rule 60(b) motion for relief from judgment in the probate court within one year after the Judgment entered as the rules require, nor has he filed a motion pursuant to Rule

1

60(b)(6), the catchall provision that authorizes relief from judgment at any time for any reason justifying such relief.  See Mass. R. Dom. Rel. P. 60(b).

Notwithstanding the forgoing, the Plaintiff filed the Verified Complaint and Jury Demand in this matter on or around March 3, 2005, requesting rescission or cancellation of the parties' Separation Agreement based on theories of duress, undue influence and incompetence.  The Defendant, acting *pro se*, filed an Answer on or around April 20, 2005, in effect denying all of the Plaintiff's allegations and requesting that his Complaint be dismissed.  In addition to filing the Complaint in this matter, the Plaintiff has also filed a Counterclaim for Modification on or around May 27, 2005, in the Plymouth County Probate and Family Court ("probate court"), wherein he requests that his alimony and health insurance obligations be eliminated.  See Exhibit 3.  Further, in the counterclaim for modification, the Plaintiff incorporates by reference the allegations contained in this action, in fact attaching his complaint as an exhibit.  Thus, the two actions essentially request the same relief, i.e. that the Plaintiff be relieved of his financial obligations under the Separation Agreement, or in the alternative, that the entire agreement be rescinded.  The Defendant has filed a Motion for Summary Judgment on the Counterclaim for Modification that is scheduled for hearing in the probate court in mid-October.  See Exhibit 4.

II.    Argument

I.    The Court should decline jurisdiction under the domestic relations exception

The Plaintiff's request for relief from the parties' Separation Agreement clearly relates to the subject of divorce, where federal courts have historically deferred jurisdiction to state courts. Federal courts have historically declined to adjudicate domestic relations disputes, even where the requirements for diversity jurisdiction are otherwise present.[1]  Wright, Miller & Cooper,

---

[1] In any event, it seems unlikely that the Plaintiff even meets the jurisdictional amount of $75,000, given that his alimony obligation that he is seeking to eliminate is only $650 per week.

Federal Practice and Procedure: Jurisdiction (2d 1984 & Supp. 2003), at §3609 ("Wright and Miller"). This judge-made exception to the diversity statute is commonly referred to as the domestic relations exception. Deferral by federal courts is all encompassing, covering "[t]he whole subject of the domestic relations of husband and wife, parent and child" which has been held to "belong[] to the laws of the states, and not to the laws of the United States." Ex parte Burrus, 136 U.S. 586, 593-94 (1890).

While federal courts have entertained disputes between spouses characterized by the plaintiff as one for damages cause by the tortious conduct of a spouse,[2] they have refrained from doing so when "tortious conduct is part of an ongoing series of disputes centering around the marital relationship." Wright & Miller, §3609 at pp. 466-67 and cases cited therein. In any event, no such comparable characterizations exist here that would warrant retention of jurisdiction.

Courts look to the substance of the action in determining whether to abstain under the domestic relations doctrine. See Sutter v. Pitts, 639 F.2d 842, 843 (1st Cir. 1981) (claim presented as one for civil rights reduced to a demand for custody, falling within domestic relations exception). Although the Plaintiff presents his claim under the guise of equitable theories based on fraud and undue influence, his complaint essentially reduces to a domestic matter based on the parties' Separation Agreement and thus falls squarely within the domestic relations exception to diversity jurisdiction. Even assuming arguendo that the claim does not fall within the exception, "federal courts should abstain from adjudicating claims that are closely related to, though not within, the jurisdictional exception." Sutter v. Pitts, 639 F.2d at 843. Hence, here too, the Plaintiff's claim cannot reasonably be viewed as anything other than an

---

[2] See e.g. Lloyd v. Loeffler, 539 F.Supp. 998 (Wis. 2d. 1982) (intentional interference with custody); Cohen v. Randall, 137 F.2d 441 (S.D.N.Y. 1943) cert. den. 320 U.S. 796 (1943) (fraudulent misrepresentation to induce divorce).

action related to the parties' divorce. Thus, because of the nature of the Plaintiff's claim, the Court should decline jurisdiction under these circumstances.

II.     The Court should refrain from exercising jurisdiction because the matter is already pending in the Plymouth County Probate and Family Court

Abstention is appropriate in this case, where the Plaintiff has a similar claim pending in the Plymouth County Probate and Family Court. Under the abstention doctrine, federal courts "have the inherent power to stay or dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction." In re Houbigant, Inc., 914 F. Supp. 997, 1003 (S.D.N.Y. 1996) (internal citations omitted). See also Landis v. North Am. Co., 299 U.S. 248, 254 (1936). Further, "a federal court, even where it has jurisdiction, may abstain for reasons of comity and common sense from cases better handled by the state courts having authority over matrimonial and family matters." Canevero v. Rexach, 793 F.2d 417, 418 (1st Cir. 1986) (internal citations omitted).

In considering whether abstention is appropriate, the Court should consider the "similarity of the parties and issues involved, promotion of judicial efficiency, adequacy of relief available in the alternative forum, consideration of fairness to all parties and possible prejudice to any of them, and the temporal sequence of filing for each action." Modern Computer Corp. v. Ma, 862 F. Supp. 938, 949 (E.D.N.Y. 1994) (citation omitted). No one factor is determinative. See Advantage Int'l Management, Inc. v. Martinez, 1994 U.S. Dist. LEXIS 12535, *14 (S.D.N.Y. Sept. 2, 1994).

In the two pending cases, the parties and the issues are the same. Specifically, the probate court action incorporates the allegations in the within action, and both actions generally request that the Plaintiff be relieved from the financial provisions as set forth in the parties' Separation Agreement. The actions were filed within three months of one another, and a hearing is scheduled to be heard on the merits of the state court action in mid-October. The Plaintiff's

4

interests will be adequately represented at the state court level and there would be no prejudice to him in not being permitted to maintain duplicative actions.

In sum, there is no sound policy reason for this Court to intervene when a state court already clearly has jurisdiction, and is already embroiled in hearing a substantially similar matter regarding the validity of the parties' Separation Agreement and the parties' obligations going forward thereunder. See Kilduff v. Kilduff, 473 F. Supp. 873, 875 (1979) (wherein federal court declined jurisdiction over matter involving "incidents of matrimonial dispute"). The right of the Defendant to continue receiving alimony, or in the alternative the right of the Plaintiff to be relieved of his obligation to pay alimony, is best left to the discretion of the court which rendered the judgment.[3] The maintenance of a suit in federal court would only serve to unnecessarily convolute matters and waste judicial and party resources.

The Defendant respectfully requests that this Honorable Court:

1)    Dismiss the Plaintiff's Verified Complaint and Jury Demand,

2)    Refrain from exercising jurisdiction,

3)    Grant such other and further equitable and legal relief as this Court deems just and proper under the circumstances.

## VERIFICATION OF EXHIBITS

The signature of the attorneys below attest that the documents attached hereto are true and accurate copies of those pleadings filed in the Plymouth County Probate and Family Court under docket number 98D-1672-DV1.

---

[3] Further warranting a declination of jurisdiction to the state court is the doubtful proposition that this Court even has the authority to afford the Plaintiff the relief he requests, i.e. to vacate or rescind a Judgment issued by a state court.

Respectfully submitted,
DEBORAH A. MOONEY
By her Attorneys,


/s/ Edward Foye
Elaine M. Epstein BBO # 155280
Edward Foye BBO #562375
Maureen McBrien BBO # 657494
Todd & Weld LLP
28 State Street
Boston, MA 02109
Tel:  (617) 720-2626

Date:  September 22, 2005



## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing on the Plaintiff, John Daniel Mooney, by first class mail, postage prepaid to his attorney of record, Brian J. Hughes, Esquire, Jackson & Coppola, P.C., Assinippi Commons, Suite 203, 101 Longwater Circle, Norwell, Massachusetts 02061.


/s/ Maureen McBrien
Date:  September 22, 2005          Maureen McBrien

6

# EXHIBIT 1

# Commonwealth of Massachusetts
## The Trial Court
### Probate and Family Court Department

Plymouth _____ Division

Docket No. _98D 1672-DV1_

## Judgment Of Divorce Nisi

JOHN DANIEL MOONEY _____ , Plaintiff

of __Weymouth__ in the County of __Norfolk__

DEBORAH A. MOONEY v. _____ , Defendant

of __Carver__ in the County of __Plymouth__

All persons interested having been notified in accordance with the law, and after hearing, it is adjudged nisi that a divorce from the bond of matrimony be granted the said plaintiff for the cause of _____

_____

__IRRETRIEVABLE BREAKDOWN - 1B__

_____

as provided by Chapter 208, sections 1, 2 and that upon and after the expiration of ninety days from the entry of this judgment, it shall become and be absolute unless, upon the application of any person within such period, the Court shall otherwise order. It is further ordered that the Separation Agreement by and between the parties dated April 1, 1999 and filed herewith is hereby incorporated and shall survive as an independent contract. The Court finds said agreement is not the product of any fraud, duress, or coercion.

A True Copy,
Attest:

_John F. Daley_

Register

Date ___6/1/99___

Justice of Probate and Family Court

CJ-D 4C3 (2/90)

# EXHIBIT 2

# SEPARATION AGREEMENT

This AGREEMENT OF SEPARATION is entered into this      day of April, 1999, by John Daniel Mooney (the "Husband"), of 149 Bolivar Street, #6C, Canton, Norfolk County, Massachusetts, and Deborah A. Mooney (the "Wife"), of 25 West Street, Carver, Plymouth County, Massachusetts. All references in the within Agreement to "parties" shall mean the above-named Husband and Wife.

## STATEMENT OF FACTS

1     The Husband and Wife were married in Pembroke, Plymouth County, Massachusetts on April 21, 1979, and last lived together in March, 1997 at Carver, Plymouth County, Massachusetts.

2.     The Husband and Wife have separated and are living apart.

3     As a result of the mutual love, respect and admiration the Husband and Wife each have for the other,  the Husband and Wife have agreed to amicably resolve any questions relating to their separation within the context of this Agreement. This Agreement shall serve to confirm their separation and to settle between themselves all questions pertaining to their respective property and estate rights and the support and maintenance of the Husband and Wife.

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants and agreements hereinafter contained, the Husband and Wife mutually agree as follows:

1

ARTICLE I

A.    Alimony.

Taking into consideration all relevant facts and circumstances, including but not limited to
the financial circumstances of the respective parties, the Husband agrees to pay the Wife
$650 per week until such time as she remarries. *The husband and the wife*
*both agree the first alimony payment shall be on*
*May 21, 1999.*

B.    Medical Insurance.

The Husband agrees to maintain the current medical insurance with major medical
coverage, or its equivalent until alimony ceases.

# ARTICLE II

# PERSONAL PROPERTY

A.    The Wife agrees that the piano, located in the marital home, is the personal
property of the Husband. The Wife agrees to return the piano to the possession of the
Husband

B.    The Husband and Wife jointly own a 1998 Jeep Grand Cherokee Limited. The
Husband agrees to transfer title of the automobile to the Wife.  It shall be the Wife's
responsibility to prepare the necessary documents to effectuate such transfer.    The
Husband agrees to execute any documents reasonably necessary to effectuate such transfer
provided that any such documents do not require the Husband to guarantee the Wife's
discharge of any obligations. The parties agree that the Wife shall be solely responsible for

2

~~any and all payments concerning the automobile including, but not limited to, principal,~~ taxes, interest, automobile insurance, repairs and maintenance.

C.    The foregoing notwithstanding, the parties acknowledge that they have heretofore divided between them all their personal property to their mutual satisfaction. Henceforth each of them shall own, have and enjoy, independently of any claim or right of the other, all items of personal property of every kind now or hereafter owned or held by him or her, with full power to dispose of the same as fully and effectually, in all respects and for all purposes, as if he or she were unmarried.

D.    All personal property held in the sole name or in the sole possession of either party, including, without limitation, securities, bank accounts, retirement funds and tangible personal property, shall belong to party in whose name or possession said personal property is presently located. Specifically, the Husband's IRA fund will remain as the personal property of the Husband.

## ARTICLE III

## TAXES

A.    Income Tax Returns

1.    Each party represents and warrants to the other that he or she has duly paid all income taxes, state and federal, attributable to him or her on all joint returns heretofore filed by the parties; that to his or her knowledge no interest or penalties are due or owing with respect thereto, no tax deficiency proceeding is pending or threatened thereon. and no audit thereof is pending.

3

Agreement, that after such knowledge, each believes this Agreement to be fair, just and reasonable and that each is signing this Agreement freely and voluntarily.

G.    Strict Compliance.  The failure of the Husband or of the Wife to insist in any instance upon the strict performance of any of the terms hereof shall not be construed as a waiver of such term or terms for the future, and the same shall nevertheless continue in full force and effect.  In the event any part of this Agreement shall be held invalid, such invalidity shall not invalidate the whole Agreement, but the remaining portions of this Agreement shall continue to be valid and binding.

H.    Documents.  Whenever called upon to do so by the other party, each party shall forthwith execute, acknowledge and deliver to or for the other party without consideration any and all deeds, assignments, bills of sale or other instruments that may be necessary or convenient to carry out the provisions of this Agreement, or that may be required to enable the other party to sell, encumber, hypothecate, or otherwise dispose of the property now or hereafter owned or acquired by such other party.

I.    Waiver of Estate Claim.  Except as otherwise provided in this Agreement, each party hereby waives and releases any and all rights that he or she may now have or hereafter acquire as spouse under the present or future laws of any jurisdiction:

(a)    To elect to take against any will or codicil of the other party now or thereafter in force;

(b)    To share in the party's estate in case of intestacy; and

8

through mediation, and if unsuccessful, then be submitted to a court of competent jurisdiction for resolution.

D.    Waivers.    The parties acknowledge and confirm that they willingly accept the provisions of this Agreement and deem it to be a fair, adequate and reasonable resolution of all issues and disputes, commensurate with the parties' needs, the parties' incomes and financial worth, and their previous standard of living and with full consideration of the circumstances of each party and all factors required to be considered pursuant to Massachusetts General Laws Chapter 208, Section 34.    The parties further acknowledge that such provisions are fully satisfactory to them and that no part of this Agreement is a product of fraud, duress or coercion and that each has freely had the opportunity to negotiate the terms of this Agreement to their respective satisfactions.    Accordingly, they accept the same in lieu of, and in full and final settlement and satisfaction of, any and all claims and rights that either may have against the other for alimony, support or property division, except as otherwise provided in this Agreement.

E.    Entire Understanding    The Husband and Wife have incorporated in this Agreement their entire understanding.    No oral statement or prior written matter, extrinsic to this Agreement, shall have any force or effect.    Neither the Husband nor the Wife is relying on any representations other than those expressly set forth herein.

F.    Voluntary Execution.    The parties represent to each other that each fully understands the facts and his or her legal rights and liabilities as set forth in this

7

A    Debts. The Husband warrants and represents that he has not contracted any indebtedness for which the Wife is or may be liable. The Wife warrants and represents that she has not contracted any indebtedness for which the Husband is or may be liable. The Husband and Wife further warrant and represent that neither will contract from and after the date hereof any indebtedness for which the other is or may be liable, except such as has specifically been assumed by the provisions of this Agreement elsewhere contained. If either of the parties hereto shall be called upon to pay any obligation for which the other shall be liable, he or she shall promptly give notice to the other party, who shall have the opportunity in good faith and at his or her expense to defend any such claim; if either party shall nevertheless be called upon to pay any such claim, the party responsible therefor shall indemnify and hold the other harmless therefrom, including attorney's fees and related expenses. The parties represent that neither of them has and will not hereafter use or utilize the other's name or business name for purposes of having credit extended to him or her.

B.    Counsel Fees. The parties agree that the Husband shall be solely responsible to pay reasonable attorney's fees of the Wife. In addition, the Wife shall be solely responsible for any and all payments concerning the $3000.00 equity line of credit borrowed to retain counsel.

C.    Resolution of Disputes. In the event of any dispute or disagreement concerning the performance, interpretation, meaning or application of this Agreement, and the parties cannot reach mutual agreement, the matter in dispute shall first attempted to be resolved

6

B.    The Husband agrees to transfer title of the property to the Wife by deed once the Wife is able to obtain a mortgage in which the Husband is not listed as a co-mortgagee. It shall be the Wife's responsibility to prepare the necessary documents to effectuate such transfer. The Husband agrees to execute any documents necessary to effectuate such transfer. The Wife agrees to remortgage the property within one year of the date of this Agreement

C.    The parties agree that the Wife shall be solely responsible for any and all payments concerning the marital home including, but not limited to, principal, taxes, interest, home owners insurance, repairs, and maintenance

D.    If the Wife elects at any time to convey the home or an interest therein to someone other than the parties' children or to a future spouse as Tenants by the Entirety, then the Husband shall be entitled to a specific percentage of the then existing equity which percentage shall vary depending upon the date of conveyance, as more specifically specified in the annexed Attachment "A"

## ARTICLE V

## GENERAL PROVISIONS

The following provisions shall become effective upon execution of this Agreement, except to the extent they are expressly or by implication modified or rendered inapplicable by the foregoing articles of this Agreement:

5

(c)    To act as executor or administrator of the other party's estate. It is the intention of the parties that their respective estates shall be administered as though no marriage between them had ever existed.

J.    Court Costs and Counsel Fees in Event of Breach. If either the Husband or the Wife shall commit a breach of any of the provisions of this Agreement and recourse to an attorney and/or legal action shall be reasonably required to enforce such provisions and be instituted by the other, the party in breach shall be liable for all court costs and reasonable counsel fees incurred in instituting and prosecuting such action.

K.    Effect of Agreement. In any divorce proceedings, this Agreement shall be exhibited to the presiding Judge before whom the divorce proceedings shall be heard. The parties agree that with respect to issues involving their property, the support and maintenance of the Husband and the Wife, and all rights arising under Section 34 of Chapter 208 of the General Laws of Massachusetts, as amended, this Agreement shall be incorporated but not merged in the divorce judgment, and shall survive as an independent contract between the parties.

L.    Governing Law. This Agreement shall be construed and governed according to the laws of the Commonwealth of Massachusetts.

9

This Agreement is executed in three counterparts, each of which shall be deemed an original and all constituting together one and the same instrument, this being one of the counterparts.

WITNESS our hands and seals this _____ day of April, 1999.

_____
John Daniel Mooney
3/30/99

*Deborah A. Mooney*
Deborah A. Mooney    3-30-99

10

COMMONWEALTH OF MASSACHUSETTS

*Plymouth* ss.

On this 30ᵗʰ day of ~~April,~~ March, 1999, then personally appeared the above-named John Daniel Mooney and acknowledged that the foregoing statements are true to the best of his knowledge and belief, before me.

*Carole C. Roy*
Notary Public
My commission expires:
3 - 02 - 2001

COMMONWEALTH OF MASSACHUSETTS

Plymouth ss.

On this 30ᵗʰ day of ~~April,~~ March, 1999, then personally appeared the above-named Deborah A. Mooney and acknowledged that the foregoing statements are true to the best of her knowledge and belief, before me.

*Mary J. McCadden*
Notary Public  Mary J. McCadden
My commission expires:  10-21-2005

## ATTACHMENT "A"

### Schedule of Husband's Equity in Marital Home

A. Years 1-5

If the Wife elects to convey the marital home or an interest therein to someone other than the parties' children or to a future spouse as Tenants by the Entirety, during the first five years following the execution of this Agreement, the Husband shall be entitled to receive from the Wife, based upon the date of conveyance, the following percentage of equity:

| Year | Percentage |
|------|------------|
| 1    | 25.0 %     |
| 2    | 22.5 %     |
| 3    | 20.0 %     |
| 4    | 15.0 %     |
| 5    | 10.0 %     |

Should the Wife remarry during the first five years following the execution of this Agreement, the Husband shall not be entitled to any equity in the marital home should the Wife elect to convey the marital home or an interest therein during that time.

B. Years 6-10

If the Wife elects to convey the marital home or an interest therein to someone other than the parties' children or to a future spouse as Tenants by the Entirety, during the sixth through the tenth years following the execution of this Agreement, the Husband shall be entitled to receive from the Wife, based upon the date of conveyance, the following percentage of equity:

| Year | Percentage |
|------|------------|
| 6    | 7.5 %      |
| 7    | 7.5 %      |
| 8    | 7.0 %      |
| 9    | 6.5 %      |
| 10   | 6.0 %      |

Should the Wife remarry during the sixth through the tenth years following the execution of this Agreement, the Husband shall be entitled to 5.0 % of any equity in the marital home should the Wife elect to convey the marital home or an interest therein during that time.

12



C. Years 11-15

If the Wife elects to convey the marital home or an interest therein to someone other than the parties' children or to a future spouse as Tenants by the Entirety, during the eleventh through the fifteenth years following the execution of this Agreement, the Husband shall be entitled to receive from the Wife, based upon the date of conveyance, the following percentage of equity:

| Year | Percentage |
|------|-----------|
| 11 | 5.0 % |
| 12 | 5.0 % |
| 13 | 4.0 % |
| 14 | 4.0 % |
| 15 | 4.0 % |

Should the Wife remarry during the eleventh through the fifteenth years following the execution of this Agreement, the Husband shall be entitled to 3.0 % of any equity in the marital home should the Wife elect to convey the marital home or an interest therein during that time.

D. In Futuro 16+

Following the fifteenth year of the execution hereof, should the Wife retain sole interest in the marital home, the Husband shall not be entitled to any equity in the marital home should the Wife elect to convey the marital home or an interest therein.

For purposes of this Agreement, equity shall be defined as the fair market value of the marital home set off by the existing amount due under mortgage.

# EXHIBIT 3

## COMMONWEALTH OF MASSACHUSETTS

**PLYMOUTH, ss.**
                                      **PROBATE & FAMILY COURT**
                                      **DOCKET NO. 98D1672-DV1**

|  |  |
|---|---|
| **DEBORAH A. MOONEY,**<br>    **Plaintiff,**<br><br>**v.**<br><br>**JOHN DANIEL MOONEY,**<br>    **Defendant.** | )<br>)<br>)<br>)<br>)      **ANSWER AND COUNTERCLAIM**<br>)<br>)<br>)<br>) |

Now comes the Defendant and offers this Answer to the Plaintiff's Complaint for Modification and Counterclaim.

### ANSWER

1.     Admitted.

2.     Admitted.

3.     Denied.

WHEREFORE, the Defendant respectfully requests that this Honorable Court dismiss the Complaint for Contempt with prejudice and with costs to the Defendant.

### COUNTERCLAIM

### COUNT I-MODIFICATION

1.  On June 1, 1999, this Court entered a Judgment providing, inter alia, that alimony of $650.00 per week be paid from Defendant to Plaintiff and that the Defendant maintain health insurance for the Plaintiff.

2.  Said Judgment was the result of a purported Separation Agreement between the parties.

1

3. The Defendant has faithfully complied with the Judgment to the best of his abilities.

4. At the time the Separation Agreement and Judgment were entered, the Defendant was not of sound mind, being under the influence of mind-altering, prescription medications.

5. At the time the Separation Agreement and Judgment were entered, the Defendant was under the duress and undue influence of the Plaintiff, who was engaging in a pattern of blackmail and coercion against the Defendant.

6. The Defendant did not enter into the Separation Agreement and order voluntarily.

7. The Defendant incorporates herewith allegations contained within the Verified Complaint filed in the case of Mooney v. Mooney, **United States District Court, D. Mass. Docket No. 05-10502-JLT**, attached hereto as Exhibit A, as if fully set forth herein.

8. The Defendant's financial condition has drastically deteriorated since the June 1, 1999 Judgment was entered; a financial statement will be submitted prior to the hearing on this Counterclaim.

9. The Plaintiff's financial condition has drastically improved since the June 1, 1999 order has entered.

10. The Plaintiff owns approximately 2.0 acres of land in the State of Maine, purchased in June of 2004, presumably for real estate development.

11. The Plaintiff has large sums of money in the bank that is sufficient to support her until she is able to obtain gainful employment. See letter of Robert Greenglass dated November 18, 2004 attached hereto as Exhibit B.

WHEREFORE, the Defendant respectfully requests that this Honorable Court enter an order discharging all current future obligations of the Defendant towards the Plaintiff found in the Judgment of June 1, 1999.

2

Respectfully submitted,
JOHN DANIEL MOONEY, by his attorneys,

Donald H. Jackson, Jr., B.B.O# 248620
Jackson & Coppola, P.C.
Assinippi Commons, Suite 203
101 Longwater Circle
Norwell, Massachusetts 02061
(781) 792-3984

Dated:  5/27/05

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May, 2005, a copy of the foregoing document was served via first class mail, postage prepaid, upon the following:

Robert E. Greenglass
One Park Place
Plymouth, Massachusetts 02360

Brian J. Hughes

3

# EXHIBIT 4

## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS

DEBORAH A. MOONEY,
      Plaintiff

v.

JOHN D. MOONEY,
      Defendant

PROBATE & FAMILY COURT
DOCKET NO. 98D1672-DV1

MOTION FOR SUMMARY
JUDGMENT PURSUANT TO
MASS. DOM. REL. P. RULE 56

Now comes the Plaintiff/Defendant-in-Counterclaim, Deborah A. Mooney, in the above-entitled matter, and moves that this Honorable Court enter a Summary Judgment dismissing the Counterclaim for Modification filed by the Defendant/Plaintiff-in-Counterclaim, John D. Mooney, on or about May 27, 2005.

In Support of the Motion, the Plaintiff/Defendant-in-Counterclaim relies upon the Affidavit of Undisputed Facts as attached hereto and incorporated by reference.

Further, the Plaintiff/Defendant-in-Counterclaim states the following:

1. On June 1, 1999, this Court entered a Judgment Nisi pursuant to an Agreement of the Parties. The Agreement, as contained in the Court file, was prepared by John D. Mooney's counsel.

2. The Agreement stated the following: "The parties acknowledge and confirm that they **willingly** accept the provisions in this Agreement and deem it to be fair, adequate and reasonable resolution of all issues and disputes, commensurate with the parties' needs, the parties' income and financial worth and their previous standard of living and with full consideration of the circumstances of each party and all factors required to be considered pursuant to Massachusetts General Laws, Chapter 208, Section 34. The parties further acknowledge that such provisions are **fully satisfactory to them and that no part of this Agreement is a product of fraud, duress or coercion** and that each has had the opportunity to negotiate the terms of this Agreement to their **respective satisfactions**." (emphasis supplied)

3. The parties further agreed that the terms of the Separation Agreement would **survive** as an **independent contract** between the parties.



4. The parties agreed that the Husband would receive a percentage of the value of the former marital home and the parties negotiated a formula of sale proceeds for the Husband to receive.

5. The former marital home was sold and the Plaintiff-in-Counterclaim received his sale proceeds in February 2005.

6. Within weeks of receiving the sale proceeds from the former marital home, the Plaintiff-in-Counterclaim filed a Complaint in the United States District Court, District of Massachusetts, bearing Docket Number 05-10502-JLT. In that Complaint, the Defendant alleged that at the time the Defendant entered into the Separation Agreement (1999), he was not of sound mind and he was under the influence of mind-altering, prescription medication. Further, the Defendant alleged that he was under the duress and undue influence of the Plaintiff, who was engaging in a pattern of blackmail and coercion against the Defendant. The Defendant stated that he did not enter the Separation Agreement and Order voluntarily. Lastly, the Defendant alleged that his financial circumstances had changed and had "drastically deteriorated since June 1, 1999."

7. Shortly after filing a Complaint in the United States District Court, the Defendant-in-Counterclaim began a pattern of withholding alimony payments, which resulted in the filing of a Contempt. A Judgment by the Court entered on June 7, 2005, to address the Defendant's contemptuous behavior. The Defendant entered a Stipulation of the Parties dated June 7, 2005, requiring the Defendant to pay all arrearages and at the time the Stipulation was submitted to the Court for approval (and entry of a Judgment). The Defendant stated that he signed the Stipulation freely and voluntarily.

8. The parties' Separation Agreement, dated June 1, 1999, is a fully surviving contract, having independent legal significance. In accordance with established case law, the provisions are <u>not</u> modifiable without a showing of "countervailing equities" (or something more than a material change in circumstances). See <u>Hayes v. Lichtenberg</u>, 422 Mass 1005, 663 N.E. 2d 566 (1996); <u>Coppinger v. Coppinger</u>, 57 Mass App 709 (2003)

9. The Complaint for Modification does not assert facts which are remotely connected to a theory of countervailing equities and, as such, the Complaint must be dismissed.

10. The Complaint for Modification asserts that the Defendant was not of sound mind and under the influence of mind-altering prescription medication and under duress and undue influence. These allegations,



if proven, would not be the basis for a modification as requested by the Defendant.

WHEREFORE, the Plaintiff/Defendant-in-Counterclaim moves that this Honorable Court enter a Summary Judgment dismissing the Counterclaim with prejudice, award the Plaintiff/Defendant-in-Counterclaim reasonable attorney's fees for the defense thereof and for such other and further relief as this Court deems necessary and proper.

Plaintiff/
Defendant-in-Counterclaim,
By Her Attorney,

Robert E. Greenglass, Esquire
One Park Place
Plymouth, MA 02360
(508) 747-0700
BBO#210100
Dated: July 19, 2005

## AFFIDAVIT OF NOTICE

I, Robert E. Greenglass, attorney for the Defendant in the above-entitled matter, hereby certify that I gave notice of filing MOTION FOR SUMMARY JUDGMENT PURSUANT TO MASS. DOM. REL. P. RULE 56 by mailing, postage prepaid, first class mail, to:

Donald H. Jackson, Jr., Esquire
Jackson & Coppola
90 Rockland Street
Hanover, Massachusetts 02339

together with notice that the same has been marked for hearing in the Plymouth County Probate & Family Court, on **Tuesday, August 30, 2005, at 9:00 a.m., sitting in Brockton.**

Robert E. Greenglass
One Park Place
Plymouth, MA 02360
(508)747-0700
BBO#210100
Dated: July 19, 2005