UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DANIEL MOONEY, | ) |
| Plaintiff, | ) |
| v. | )  CIVIL ACTION NO.  05-10502-JLT |
| DEBORAH A. MOONEY, | ) |
| Defendant. | ) |

**PLAINTIFF JOHN DANIEL MOONEY'S OPPOSITION TO DEFENDANT DEBORAH A. MOONEY'S MOTION FOR THE COURT TO DECLINE JURISDICTION**

Now comes the Plaintiff, John Daniel Mooney, who respectfully submits to this Honorable Court his Memorandum in opposition to the Motion of the Defendant, Deborah A. Mooney, to dismiss the above-captioned civil action.

**FACTS AND PROCEDURAL HISTORY**

This is a case whereby the Plaintiff is seeking equitable relief in the form of rescission or cancellation of a written contract between him and the Defendant.  The basis for the action is that the Plaintiff only entered into the contract because he was coerced, blackmailed, subject to undue influence, and otherwise placed under duress by the Defendant during a time when he was particularly vulnerable due to the Plaintiff's weakened mental state.  At the time of the duress, which included blackmail and forgery, the Plaintiff was under the care of two mental health professionals and under the influence of powerful, psychoactive, prescription medications.

The written contract in question is the Separation Agreement between the parties regarding their divorce and was entered into in 1998.  As a result of the duress, etc. said contract is void *ab initio* and the Plaintiff seeks a judicial determination to that effect.  The Plaintiff is in

1

no way challenging the Judgment of Divorce entered by the Plymouth Probate and Family Court ("Probate Court") in this forum.  The contract survived the Judgment and has independent legal existence and significance, separate and apart from the Judgment.  The parties to the Separation Agreement have the same rights and expectations under the law as any other parties to a contract; they can sue and be sued for rescission, enforcement, and breach.

     The Verified Complaint in this action was filed in March of 2005.  After service upon the Defendant (a resident of the State of Maine) was effected and as a result thereof, the Defendant filed an action for contempt in the Probate Court seeking, *inter alia*, to imprison the Plaintiff.  As part of his defense to the Complaint for Contempt, the Plaintiff countersued for modification of the Probate Court's **Judgment**, based upon the drastic and material change in the circumstances of the parties and on other equitable grounds.  A true and accurate copy of the Amended Counterclaim for Modification is attached hereto as Exhibit A.[1]  The Defendant later filed a *pro se* Answer to the Verified Complaint on April 25, 2005.  Counsel for the Plaintiff sought, to no avail, to confer with the Defendant pursuant to Fed. R. Civ. P. 26(f) and a report pursuant to said Rule was filed with the Court on May 31, 2005.  After the Rule 26(f) report was filed, the Plaintiff served notice, and took the Depositions of Aaron Mooney, Bradford Mooney, and Rebecca Cornwell, and subpoenaed documents from Franklin Savings Bank and The Northwestern Mutual Life Insurance Company.  The immediate Motion was filed on September 22, 2005.

---

[1] The document attached to the Defendant's Memorandum as Exhibit 3 is **not** a true copy of the applicable pleading in the Probate Court matter.  Further, the Motion for Summary Judgment attached to the Defendant's Memorandum as Exhibit 4 is, upon the belief of the undersigned counsel, not scheduled for a hearing before the Probate Court.

2

**ARGUMENT**

I.   **The Domestic Relations Abstention Doctrine Is Inapplicable To This Case**

   A.   <u>The Domestic Relations Exception Is Limited To Cases Where The Relief Sought Involves Divorce or Related Matters</u>

The crux of the Defendant's argument is that this Court should abstain from exercising its jurisdiction (based on diversity) because this case is essentially a probate proceeding. However, this is a red herring, intended to confuse the issues involved herein. As will be demonstrated below, this is not a domestic relations matter, but rather, a classic contract case.

The "domestic relations exception", as it is generally known, is a judicially created doctrine whereby the federal courts will decline jurisdiction and dismiss cases "involving divorce and alimony, child custody, visitation rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification." <u>Moore's Federal Practice</u>, § 102.91[1] (3d ed. 2004). This exception "only applies to cases that are **primarily** marital disputes and…is rather narrowly confined." Wright, Miller & Cooper, <u>Federal Practice and Procedure: Jurisdiction</u>, § 3609 (2d ed. 2003)(quoting <u>Phillips, Nizer, Benjamin, Krim & Ballon</u> v. <u>Rosenthiel</u>, 490 F.2d 509 (2d Cir. 1973)(emphasis added and internal quotations omitted). In <u>Akenbrandt</u> v. <u>Richards</u>, the United States Supreme Court held that "the domestic relations exception encompasses only cases involving the **issuance** of a divorce, alimony, or child custody decree," and expressed favor towards the view held by several Courts of Appeals that the exception only applies to those cases where a divorce, alimony, or child custody decree is sought by the claimant. <u>Akenbrandt</u> v. <u>Richards</u>, 504 U.S. 689, 703-704, 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992)(emphasis added); <u>see also,</u> <u>Moore's Federal Practice</u>, § 102.91[5][b] ("inasmuch as the allegations of the complaint did not request the district court to issue a divorce…the suit was appropriate for the exercise of jurisdiction.").

The Supreme Court further held, with regard to the domestic relations exception, that "abstention should rarely be invoked, because the federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." Akenbrandt, at 705 (internal quotations omitted). Therefore, the contention of the Defendant, that the abstention doctrine is "all encompassing", is in direct conflict with the holdings of the Supreme Court in Akenbrandt and its progeny and because the Plaintiff is not seeking a decree of divorce, etc., the Court has an obligation to exercise jurisdiction over the matter.

B.      The Plaintiff's Case Is Not Unique

With respect to cases such as the Plaintiff's, numerous courts throughout the nation have held that it is appropriate for the federal courts to exercise jurisdiction over actions involving divorce settlement agreements. In Crouch v. Crouch, 566 F.2d 486 (5th Cir. 1978), the Court held that the exercise of diversity jurisdiction was appropriate in a suit for breach of divorce separation agreement, for although the suit concerned alimony payments, it was essentially a contractual dispute over the payment of money. In Cain v. King, the Court exercised jurisdiction over a divorce settlement agreement, for the alimony payments then due exceeded the amount in controversy requirement. It was stated that "this Court feels impelled to assume jurisdiction over this matter on the grounds that the dispute here involved is, in effect, simply a contest between two people who have not, for some seven years, been man and wife, over the interpretation of what one contends to be a simple contract between them and the other contends to be a contract which ultimately became merged in a divorce decree." Cain v. King, 313 F.Supp. 10, 16 (D. La. 1970).

In this case, the Plaintiff is not seeking to enforce the various provisions of the Settlement Agreement, but rather he seeks a determination of the validity of the Agreement based upon facts

4

existing prior to and at the time of its execution. On this premise, there is additional support for the exercise of the Court's jurisdiction. Federal courts have routinely exercised jurisdiction over cases where the Plaintiff seeks to invalidate a state court *judgment* of divorce (a much more drastic remedy than that sought by the present Plaintiff) if said judgment was "obtained by fraud or unsupported by…jurisdiction," and not subject to modification or continuing jurisdiction of the court. Federal Practice and Procedure: Jurisdiction, *supra*. In fact, numerous courts have exercised jurisdiction in cases concerning divorce decrees and support arrearages, provided said decrees were final and not subject to modification. See, Gonzalez Canevero v. Rexach, 793 F.2d 417 (1st Cir. 1986)("liquidated obligations arising from domestic relations suits, such as accrued alimony or property settlements, may be enforced in the district courts")(quoting Thrower v. Cox, 425 F.Supp. 570, 573 (D.S.C. 1976). See also, Rapoport v. Rapoport, 416 F.2d 41 (9th Cir. 1969), Southard v. Southard, 305 F.2d 730 (2d Cir. 1962), Harrison v. Harrison, 214 F.2d 571 (4th cir. 1954); Dorey v. Dorey, 609 F.2d 1128 (5th Cir. 1980), Drewes v. Ilnicki, 863 F.2d 469 (6th Cir. 1988); with regard to unpaid child support, see Holden v. Holden, 957 F.Supp. 1204 (D. Kan. 1997)(jurisdiction exercised over son's claim against father for unpaid child support). In Vann v. Vann, 294 F.Supp. 193 (E.D. Tenn. 1968), the Court exercised jurisdiction where the former spouse alleged that a state court divorce judgment was obtained through the fraud of the other spouse. In the case of Rash v. Rash, the Eleventh Circuit Court of Appeals allowed the exercise of jurisdiction where the claim sought a declaration as to the applicability of two competing divorce decrees. Jurisdiction was proper, for the Court was not required to delve into the parties' domestic affairs. Rash v. Rash, 173 F.3d 1376 (11th Cir. 1999). As can be seen from the cases cited above, it is entirely appropriate for this Court to exercise jurisdiction over this

case, as the relief sought deals only with the validity of a legal instrument and not a determination of the marital status of the parties.

As discussed above, the Plaintiff claims that the Defendant coerced him into entering into the Separation Agreement.  Assuming, *arguendo*, that the Court exercises jurisdiction, it can be expected that determinations would have to be made as to the behavior of the parties in the months leading up to the divorce decree, the deception and coercion by the Defendant, the mental state of the Plaintiff, and whether, at the time of its execution, the Plaintiff entered into the Separation Agreement voluntarily and cognitively.  There need be no determination by this Court regarding the divorce decree, the compliance with the decree or the Separation Agreement, or the application of Massachusetts domestic relations law.[2]  As far as this Court is concerned, this case would be no different if the parties were corporations or unmarried individuals.  The subject matter of the contract is not controlling and the Court's examination of the Separation Agreement centers only on its execution, but not its terms.  McNeil v. McNeil, 78 F. 834 (C.C.D. Cal. 1897)("for what the judgment was rendered is not essential.  It is that it was obtained by fraud, and hence unjust to hold and use…").  Further, unlike a case involving a Massachusetts divorce decree, this Court will have no continuing jurisdiction over the matter once the case is concluded.

C.    Factors To Consider

In determining whether to exercise jurisdiction, courts must "sift through the claims of the complaint to determine the true character of the dispute to be adjudicated."  Kirby v. Mellenger, 830 F.2d. 176, 178 (11th Cir. 1987)(citing Firestone v. Cleveland Trust Co., 654 F.2d

---

[2] If this Court rescinds or cancels the Separation Agreement, the Plaintiff is still subject to the judgment of the Probate Court.  According to Massachusetts law, that Judgment can only be modified by the Probate Court.

1212, 1216 (6th Cir. 1981)).[3] Once the nature of the nature of the dispute is ascertained, the court should look to the policies fostered by the domestic relations exception to see if abstention is appropriate. These policies include, but are not limited to, "[1.] the strong state interest in domestic relations matters, [2.] the competence of state courts in settling family disputes, [3.] the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and [4.] the problem of congested dockets in federal courts." Kirby, *supra*. In the immediate case, none of these interests are infringed, for the court is not asked to entertain orders of specific domestic relations relief (divorce, alimony, child support, etc.) and the legal and factual issues involved, the voluntariness of a party's entrance into a contract, are well within the Court's expertise and not of a specialized nature unique to the state courts. Further, if the Court awards the Plaintiff the relief sought, there is no risk that a state court will enter an incompatible order or judgment of its own. Any judgment issued by this Court will have a *res judicata* effect on the issues of the presence of duress or undue influence by the Defendant and the Plaintiff's mental state at the time of the contract. Any court, state or otherwise, would be bound to follow those judicial determinations in any subsequent action. Finally, with regard to the docket of the federal courts, the undersigned counsel firmly believes that this is a case that will involve very little judicial intervention, outside of the filing of summary judgment motions and a trial.[4]

In light of the above, the immediate case is clearly within the Court's jurisdiction, as it involves a written contract, not subject to modification, that is being challenged on the basis of

---

[3] In Kirby, the Court overruled a District Court dismissal based on the domestic relations exception, holding that a suit over the status of spousal benefits not specifically deliniated in a divorce decree did not involve core domestic relations issues.

[4] There is currently a case pending before the Court, to wit, The Northwestern Mutual Life Insurance Co. v. Mooney, et al., **U.S. District Court Docket No. 05-11301-JLT**, that incorporates many of the same issues involved in the immediate case. Therefore, if this case were dismissed, the Court and the parties will still be engaging in the same discovery and trial issues in the Northwestern Mutual case, causing minimal relief to the Court's docket.

fraud and coercion, and does not require the Court to examine the marital affairs of the parties. Accordingly, it is appropriate for the Court to exercise its subject matter jurisdiction over this matter and it should not be declined.

## II.     This Matter Is Not Pending Before The Probate Court

The Defendant incorrectly alleges that this matter is already pending before the Probate Court. However entrenched this misconception may be among the Defendant's various counsel, it does not make it true. As previously referenced, the Amended Counterclaim, filed with the Probate Court in August, seeks to *modify* the *Judgment* of the Court and is solely based on the material change in economic circumstances amongst the parties. Assuming, *arguendo*, that Judge Menno of the Probate Court (who has ruled on the case since 1999) modifies its Judgment and absolves the Plaintiff of all liability under its Judgment, the Defendant still has a right under this Separation Agreement to sue the Plaintiff for breach thereof. This fact is admitted to by the Plaintiff in her portion of the Joint Statement filed on Friday, September 30, 2005 ("the Separation Agreement survives as an independent contract…it can be sued upon as a contract.").

Several policy considerations are listed by the Defendant as to the extent of the Court's review. These include comity towards the Commonwealth, judicial efficiency, adequacy of relief, and fairness and prejudice to the parties. With respect to comity, the Court clearly has jurisdiction to hear the matter, as it involves a contract between diversely domiciled parties. Any adjudication in this matter will not infringe upon the province or prerogative of the Commonwealth, for there is no risk of contradictory decisions and there is no overriding state interest in the case. Next, the idea that it would more efficient to try this matter in the Probate Court is a farce. Besides the previously discussed case already in this Court involving The Northwestern Mutual Life Insurance Company (which can only be properly litigated in this

forum) which entails many of the same issues and will require the parties to engage in many of the same discovery and trial proceedings, any knowledgeable practitioner in the Plymouth Probate Court must acknowledge the inefficiency and backlog of cases and decisions in that Court.  It is not unusual for all parties and their counsel to wait for up to six hours before having their matters heard, irrespective of the banality of the matter presented.  This, as well as the efficient case management found in the federal system, weighs heavily in favor of keeping this case just where it is.  Further, with regard to the adequacy of relief offered in the Probate Court, the Plaintiff feels an unfair disadvantage proceeding in that forum, in consideration the fact that the Commonwealth's probate system requires that his case be heard in front of Judge Menno, who, the Plaintiff alleges, inappropriately and incorrectly adapted the Separation Agreement and incorporated it into his Judgment.  Finally, the interests of fairness between and prejudice to the parties clearly favor of the Plaintiff.  The instant case was filed in March, some two months prior to the Defendant filing her action in the Probate Court that ultimately fostered the counterclaim for modification of the Probate Court Judgment.  It would be patently unfair for the Court to allow the Defendant to destroy jurisdiction in an otherwise appropriate case by bringing a subsequent action in state court.  If the matters are duplicative, it is at the insistence of the Defendant in bringing her contempt claim as retaliation to this case.  Also, it should be pointed out that discovery has already commenced, in earnest, without objection by the Defendant, and some potential witnesses would not be subject to the Probate Court's jurisdiction, in part because the Defendant relocated herself to a foreign state.  Such complexities and difficulties need not be laid upon the Plaintiff, who has the <u>right</u> to bring this case in federal court.

 Accordingly, the facts and equities of the case impel the Court to retain jurisdiction and deny the Defendant's Motion.

## **CONCLUSION**

WHEREFORE, the Plaintiff, John Daniel Mooney, respectfully requests that this Honorable Court DENY the Motion of the Defendant, Deborah A. Mooney, to dismiss the case based upon a declination of subject matter jurisdiction by the Court.

       Respectfully submitted,
       JOHN DANIEL MOONEY,
       by his attorneys,
       Jackson & Coppola, P.C.


       /s/  Brian J. Hughes
       _____
       Brian J. Hughes, B.B.O.# 654204
       Donald H. Jackson, Jr., B.B.O.# 248620
       Jackson & Coppola, P.C.
       Assinippi Commons, Suite 203
       101 Longwater Circle
       Norwell, Massachusetts 02061
       (781) 792-3984

Dated:  September 30, 2005

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

**PLYMOUTH, ss.**     PROBATE & FAMILY COURT
                     DOCKET NO. 98D1672-DV1

|  |  |
|---|---|
| **DEBORAH A. MOONEY,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | AMENDED COUNTERCLAIM |
| ) | |
| **JOHN DANIEL MOONEY,** ) | |
| Defendant. ) | |
| ) | |

Now comes the Defendant and offers this Amended Counterclaim. *This is allowed as a matter of right, as the Plaintiff has not filed an answer.*

## COUNTERCLAIM

### COUNT I-MODIFICATION

1. On June 1, 1999, this Court entered a Judgment providing, inter alia, that alimony of $650.00 per week be paid from Defendant to Plaintiff and that the Defendant maintain health insurance for the Plaintiff.

2. Said Judgment was the result of a purported Separation Agreement between the parties.

3. The Defendant has faithfully complied with the Judgment to the best of his abilities.

4. The Defendant's financial condition has drastically deteriorated since the June 1, 1999 Judgment was entered; a financial statement has been filed.

5. The Plaintiff's financial condition has drastically improved since the June 1, 1999 order has entered; a financial statement has been filed.

1

6. According to the financial statements filed by the parties, the Defendant has $111,369.16 in net assets, as compared to the Plaintiff's $75,451.74.

7. The Plaintiff owns approximately 2.0 acres of land in the State of Maine, purchased in June of 2004, presumably for real estate development.

8. The Plaintiff has large sums of money in the bank that is sufficient to support her until she is able to obtain gainful employment. See letter of Robert Greenglass dated November 18, 2004 attached hereto as Exhibit A.

WHEREFORE, the Defendant respectfully requests that this Honorable Court enter an order discharging all current and future obligations of the Defendant towards the Plaintiff, as found in the Judgment of June 1, 1999.

Respectfully submitted,
JOHN DANIEL MOONEY, by his attorneys,

_____
Brian J. Hughes, B.B.O.# 654204
Donald H. Jackson, Jr., B.B.O# 248620
Jackson & Coppola, P.C.
Assinippi Commons, Suite 203
101 Longwater Circle
Norwell, Massachusetts 02061
(781) 792-3984

Dated: _____

## CERTIFICATE OF SERVICE

  I hereby certify that on this ____ day of _____, 2005, a copy of the foregoing document was served via first class mail, postage prepaid, upon the following:

Robert E. Greenglass
One Park Place
Plymouth, Massachusetts 02360
Counsel for Deborah A. Mooney

                  _____
                  Brian J. Hughes

ROBERT E. GREENGLASS
ATTORNEY AT LAW

November 18, 2004

Brian J. Hughes, Esquire
Jackson & Coppola
90 Rockland Street
Hanover, Massachusetts 02339

RE:   John D. Mooney
  v.   Deborah A. Mooney

Dear Attorney Hughes:

Thank you for your letter of November 17, 2004. Enclosed you will find an Entry of Appearance, on behalf of Deborah A. Mooney, as you have requested. The original has been filed with the Plymouth County Probate and Family Court. Shortly, I will be filing an Answer to the Complaint for Contempt.

As you have requested, I am providing you with confirmation that my client presently has, on deposit in her checking account, an amount in excess of $220,000.00, representing the bulk of the proceeds from the sale of the former marital home. I have in my file, a copy of a printout from my client's bank account ledger showing the balance of the account as of November 17, 2004. I have instructed my client to not dissipate the account other than by the payment of her usual and customary living expenses.

Certainly, you will agree that there are more than sufficient funds to pay your client's claim, once the amount has been established. As such, I suggest that there is not a true emergency in this matter and that between counsel, we should be able to agree upon a date to continue the Complaint for Contempt.

Lastly, I would like either you and/or Attorney Jackson to carefully review the terms of the parties' Separation Agreement and, particularly, paragraph C on

One Park Place
Plymouth, MA 02360
508-747-0700
FAX 508-747-7642

Mooney v. Mooney
November 18, 2004
Page Two

---

page six (6). Perhaps, your office has prematurely filed a Complaint for Contempt in light of the requirement stated in the parties' contract. I invite you to consider the provisions of that paragraph and to further consider engaging in mediation to resolve this dispute, without the necessity of protracted litigation. As always, I stand ready and willing to discuss a resolution with your office at any time.

I thank you in advance for your courtesy in continuing the case. I will be available on Friday, December 10, 2004, and Friday, December 17, 2004, to have this matter further addressed by the Court, if it is required.

Please contact me to confirm that the case will be continued from the date of November 19, 2004, and that my appearance will not be required.

Very truly yours,

Robert E. Greenglass
REG/mm

enclosure:   Copy of Entry of Appearance

cc:          Ms. Deborah A. Mooney

**TRANSMITTED BY FAX:**
**TO:**     781-826-0316
**DATE:**   11-18-04
**TIME:**   10:38 a.m.
**PAGES:**  3